**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN TEDESCO,** | : |
| **Plaintiff** | : |
| | : **CIVIL ACTION NO. 3:17-0997** |
| | : |
| **v** | : |
| | : **(JUDGE MANNION)** |
| **CYNTHIA LINK, *et al.,*** | : |
| **Defendants** | : |

**MEMORANDUM**

I. **Background**

Plaintiff, John Tedesco, an inmate confined in the Retreat States Correctional Institution, Hunlock Creek, ("SCI-Retreat"), Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1, complaint). Prior to service of the complaint, Plaintiff filed a supplemental complaint. (Doc. 8). The named Defendants are Cynthia Link, SCI-Graterford Superintendent; Laurel Harry, SCI-Camp Hill Superintendent; and Ms. Zobitne, SCI-Camp Hill Unit Manager.

Plaintiff alleges that on June 15, 2016, he was transferred from SCI-Graterford to SCI-Camp Hill. (Doc. 1, complaint). He states that on June 14, 2016, he "packed all of [his] legal work, briefs, discovery, grand jury and preliminary hearing transcripts, dockets, [and] appeals [he] was working on for 2 months at Graterford, thousands of pages of cases...". Id. He claims that

"when [he] arrived at Camp Hill all of [his] property was missing." Id. Plaintiff states that he was "led to believe that Camp Hill was in touch with Graterford and that they were working on a solution to getting [Plaintiff's] legal property back", while "all along [Plaintiff's] appeals were due on his direct appeal." (Doc. 8, supplement). Plaintiff claims that "it's now been 15 months and the Department of Corrections still has not provided [him] with any of his legal property during the most important time of the appeals process." Id.

Plaintiff filed the instant action, claiming that his First, Fourth, Eighth and Fourteenth Amendments have been violated. Id. For relief, Plaintiff seeks compensatory damages for "being denied [his] constitutional rights of access to courts," and "also be recompensated (sic) for the gross negligence and reimbursement for the thousands of dollars to obtain [his] legal work and papers caused by the Department of Corrections." (Doc. 1, complaint). Plaintiff also seeks "the court to overturn [his] and [his] wife's appeals that [Plaintiff] was working on and convictions [they] had no chance because of [their] indolent and ill prepared attorneys not to bring up any issues of merit, not to mention all of the trial and pre-trial errors that were brought on by the district attorney's office of Monroe County that our court 'appointed attorneys' would never bring up on appeal." Id.

The parties have filed cross-motions for summary judgment. The

motions are fully briefed and are ripe for disposition. For the reasons that follow, the Defendant's motion will be **GRANTED** and the Plaintiff's motions will be **DENIED**.

## II.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of

Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U .S.

4

at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

### III.  **Statement of Undisputed Facts**

On August 14, 2015, following a jury trial in Monroe County, Pennsylvania, Plaintiff was convicted of the following offenses under docket number CP-45-CR0002228-2013: murder of the third degree, neglect of a care-dependent person, theft by unlawful taking, theft by failing to make required disposition of funds received, and tampering with/fabricating physical evidence. (Doc. 58-2 at 2 - 34, Criminal Docket Sheet). Plaintiff was also convicted of conspiracy to commit each of these crimes, with the exception of tampering with physical evidence. Id. Plaintiff was tried, convicted, and sentenced along with his wife, Tina Tedesco. (Doc. 58-3 at 3, Pennsylvania Superior court Memorandum Opinion dated February 12, 2017). On October 26, 2015, the trial court sentenced Tedesco to an aggregate term of incarceration of not less than 183 months and not more than 366 months. Id. He and his wife were convicted of the same crimes and received identical

sentences. Id.

Attorney Robert Saurman entered an appearance in Plaintiff's criminal case on August 10, 2015, and represented him at trial. (Doc. 58-2 at 2 - 34, Criminal Docket Sheet). Attorney Saurman filed post-trial motions on behalf of the Plaintiff on November 5, 2015. Id. He then filed a notice of Appeal to the Superior Court of Pennsylvania on March 8, 2016. Id. The appeal was docketed at 787 EDA 2016. Id. The Superior Court denied Plaintiff's appeal and affirmed his sentence on February 13, 2017. (Doc. 58-3 at 2, Pennsylvania Superior court Memorandum Opinion dated February 12, 2017).

On March 20, 2017, Attorney Saurman filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania. (Doc. 58-2 at 2 - 34, Criminal Docket Sheet). That Petition, docketed at 159 MAL 2017, was denied on September 19, 2017. (Doc. 58-4 at 2, Order). The Plaintiff subsequently filed a *pro se* Petition for Writ of Certiorari with the United States Supreme Court. See Tedesco v. Pennsylvania, 138 S.Ct. 1703 (2018). That Petition was denied on April 30, 2018. Id. Plaintiff's Petition for Rehearing was denied on July 16, 2018. See Tedesco v. Pennsylvania, 138 S.Ct. 2713 (2018).

On December 28, 2016, Attorney Saurman wrote a letter to Plaintiff, offering to assist him by either petitioning the court to authorize the expense of making additional copies of the missing legal paperwork, or to send

everything to the Plaintiff in an electronic format. (Doc. 58-5 at 2, Letter). Additionally, in his letter, Attorney Saurman informed Plaintiff that the time for filing a petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA") would start to run at the conclusion of any possible appeals. Id. Plaintiff apparently did not take advantage of Attorney Saurman's offer to assist in securing copies of Plaintiff's legal paperwork, but instead contacted the Monroe County Court on his own, to no avail. (Doc. 58-1 at 7, Tedesco Deposition at 21:17-23).

On February 26, 2019, Tedesco filed a petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). See Commonwealth of Pennsylvania v. John Michael Tedesco, CP-45-CR-0002228-2013. By Order dated February 28, 2019, Donald Gual, Esq., was appointed as counsel and granted leave to file an amended complaint. Id. On March 11, 2019, Attorney Gual filed a motion to vacate appointment as conflict counsel, which was granted on March 14, 2019 and Attorney Janet Catina was appointed. Id. Tedesco's PCRA remains currently pending.

The parties do not dispute that Tedesco was transferred on June 15, 2016 from SCI-Graterford to SCI-Camp Hill, and that his legal property never arrived at SCI-Camp Hill. It is also undisputed the none of the named Defendants personally packed, inventoried or transported Plaintiff's property.

Finally, there is no dispute as to whether Plaintiff exhausted administrative remedies with respect to the missing property.

## IV.  Discussion

### A. Personal Involvement

In order to state a viable section 1983 claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990). "To establish liability for deprivation of a constitutional right under §1983, a party must show personal involvement by each defendant." Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009) ("Because vicarious liability is inapplicable to Bivens and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); see Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

Moreover, it is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of

*respondeat superior*. See, e.g., [Rizzo v. Goode, 423 U.S. 362 (1976)](#). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. [Sutton v. Rasheed, 323 F.3d 236, 249–250 (3d Cir. 2003)](#). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the Court stated in [Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)](#):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [(Docs. [2](#), [7](#)) P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

Aside from naming SCI-Graterford Warden Link and SCI-Camp Hill Superintendent Harry, in the caption of the complaint, there are no allegations in the body of the complaint against these Defendants. There is no evidence of record that these Defendants were personally involved in any of the alleged incidents of constitutional deprivation. Thus, it is apparent that Plaintiff is attempting to impose liability on Warden Link and Warden Harry on the basis of *respondeat superior*. As such, Defendants, Warden Link and Warden Harry are entitled to dismissal.

Moreover, aside from Plaintiff alleging in his complaint that he filed a grievance with Defendant, Unit Manager Zobitne regarding the missing property, after he realized it was missing, Plaintiff fails to allege that Defendant Zobitne was personally involved in any deprivation of his rights under the Constitution or any other law of the United States. A prison official's participation in grievance processes, including appeals, fails to establish the requisite personal involvement." Brooks v. Beard, 167 Fed.Appx. 923, 925 (3d Cir. 2006) ("Although the complaint alleges that [prison officials] responded inappropriately to [the plaintiff's] later-filed grievances about his medical treatment, these allegations do not establish [the prison officials'] involvement in the treatment itself."). Thus, Defendant Zobitne is entitled to dismissal.

### B. **Access to the Courts Claim**

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828.

However, in Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court effectively repudiated much of its prior holding in Bounds. In Lewis, the

Supreme Court held that Bounds did not recognize an independent right in prisoners to have an adequate law library; instead, it concerned the established right of access to the courts. Lewis, 518 U.S. at 351. Thus, the Lewis Court held that, in order to successfully challenge a denial of this right of access to the courts, it is not enough for an inmate to establish that the law library provided was inadequate or he was denied access either to the law library or to legal materials; rather, he must establish that such inadequacies in the library or in accessing legal materials caused him actual harm.

> Because Bounds did not create an abstract freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary [which claim would be rejected due to such healthy inmate lacking an actual injury so as to confer standing to bring suit]. Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," [Bounds 430 U.S.] at 823 (internal quotation marks omitted) and the inmate must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to even file a complaint.

Lewis, 518 U.S. at 351.

Moreover, Lewis requires that an inmate seeking to prove denial of access to courts prove that the claim that he was denied bringing was nonfrivolous. See Lewis, 518 U.S. at 353 n. 3. Such a requirement is simply a functional result of requiring an "actual injury." If an inmate is denied access to courts to bring a frivolous suit, he has simply not been injured, i.e., he has suffered no prejudice. See id. ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value-arguable claims are settled, bought and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all....").

In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff

specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." Id. The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. " Id. at 414.

The record before this Court reveals that Plaintiff has pursued his direct appeal remedies all the way to the United States Supreme Court. Additionally, Plaintiff has timely pursued state court collateral remedies, with the filing of his PCRA petition, which is currently pending before the state courts. There is absolutely no evidence of record to establish that Tedesco was unable to communicate with a lawyer or the courts, or that he has suffered any injury or loss in the form of access to the courts. He has not established that he has missed a deadline, was precluded from advancing an arguably meritorious

claim or motion, or was otherwise injured. While Plaintiff asserts that the loss of his paperwork somehow hampered his ability to pursue his appeals, the record evidence proves otherwise. As such, the Plaintiff does not have an injury, and is prevented from summary judgment.

Moreover, to the extent that Plaintiff requests compensation for illegal confinement, it is well-settled that prisoners cannot use §1983 to challenge the fact or duration of their confinement or to seek immediate or speedier release. Preiser v. Rodriguez, 411 U.S. 475 (1973). The United States Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S. 477 (1994). "The complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id.

Because there is no indication of record that there has been a

successful prior adjudication pertaining to Plaintiff's alleged unlawful sentence, it is appropriate to dismiss the claim for damages as legally frivolous. Plaintiff cannot, under Heck, maintain a cause of unlawful imprisonment until the basis for that imprisonment is rendered invalid. See also Gilles v. Davis, 427 F.3d 197, 210 (3d Cir. 2005) (holding that the favorable termination rule of Heck, under which a state inmate must secure a determination of invalidity of his conviction or sentence before seeking §1983 damages for unconstitutional conviction or confinement, applies to suits by prisoners who no longer are in custody, even though federal habeas relief no longer is available due to the prisoner's release); Mitchell v. Department of Corrections, 272 F. Supp. 2d 464, 473 (M.D. Pa. 2003).

### C. Deprivation of Property

To the extent that Plaintiff is alleging a Fourteenth Amendment deprivation of property without due process claim, his claim is not actionable under 42 U.S.C. §1983. See Coulson v. Mooney, 2015 WL 1034632 (M.D. Pa. 2015) (dismissing the complaint on screening because the plaintiff had an adequate post-deprivation remedy to address his claim that his cellmate deliberately destroyed his television and other personal property). The Supreme Court of the United States has held that neither negligent nor

intentional deprivations of property violate the Due Process Clause if there is a meaningful post-deprivation remedy for the loss. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527, 530 (1981). The Third Circuit Court of Appeals has "held that the prison's grievance program and internal review provide an adequate post-deprivation remedy to satisfy due process." Barr v. Knaueer, 321 Fed. Appx 101, 103 (3d Cir. 2009) (citing Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 422 (3d Cir. 2000). See also Griffin-El v. Beard, 2010 WL 1837813 (E.D. Pa. 2010) (concluding that a "prisoner's 'failure to [properly] avail himself of such remedy does not affect its adequacy as a post-deprivation remedy'"). Additionally, "the failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Gordon v. Vaughn, 1999 WL 305240 (E.D. Pa. May 12, 1999) (citing Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995).

Moreover, Plaintiff has another post-deprivation remedy, namely a state conversion action. See Crosby v. Piazza, 2012 WL 641938 (3d. Cir. 2012) (holding that to the extent an inmate "is dissatisfied with the outcome of the administrative process, he may still file a state court tort action"); Reavis v. Poska, 2010 WL 2511379 (W.D. Pa. 2010) ("Plaintiff, cannot as a matter of

law, make a claim under the Fourteenth Amendment for a deprivation of property without due process" because the DOC's "internal grievance procedure and the availability of a state tort suit in state court provide adequate post deprivation remedies."); 42 Pa.C.S.A. §8522(a), (b)(3).

Plaintiff admits to filing grievances regarding his lost property, and therefore, has participated in a meaningful post-deprivation grievance procedure. As discussed, if a meaningful post-deprivation grievance procedure is available, regardless of whether the result of this grievance procedure is favorable to the plaintiff, the plaintiff will not have a claim for a violation of the Due Process Clause of the Fourteenth Amendment. Therefore, in accordance with the aforementioned precedential case law, Plaintiff has failed to allege a Fourteenth Amendment violation of the Due Process Clause.

To the extent that Plaintiff claims that the loss of his legal paperwork constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution, his claim is without merit.

The Eighth Amendment's prohibition of cruel and unusual punishment does not only restrain affirmative conduct, such as the use of excessive force against prisoners. See, e.g., Hudson v. McMillian, 503 U.S. 1, 5 (1992). It also imposes a duty on prison officials to provide humane conditions of

confinement and to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. A substantial risk of serious harm "may be established by much less than proof of a reign of violence and terror," but requires more than a single incident or isolated incidents. See Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir.1985). To determine whether officials operated with deliberate indifference, courts question whether they consciously knew of and disregarded an excessive risk to the prisoner's well being. Farmer, 511 U.S. at 840–44. Not only must a prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but the official "must also draw the inference." Farmer, 511 U.S. at 837. "[A] prison official is deliberately indifferent when he *knows or should have known* of a sufficiently serious danger to an inmate." Young v. Quinlan, 960 F.2d 351, 361 (3d Cir. 1992) (emphasis in original).

While the loss of one's legal paperwork is frustrating and unfortunate, it does not rise to the level of cruel and unusual punishment, so as to deprive the Plaintiff of the "minimal civilized measure of life's necessities." As such, he is not entitled to summary judgment.

### D. **Fourth Amendment Claim**

To the extent that Plaintiff attempts to argue that the seizure of his property at SCI-Graterford, for transfer to SCI-Camp Hill was unreasonable and in violation of his constitutional rights, this claim is meritless as a matter of law, as prisoners do not have legitimate expectations of privacy in their cells giving rise to a Fourth Amendment claim against unreasonable searches and seizures. See Hudson v. Palmer, 468 U.S. 517, 525-26 (1984); United States v. Donahue, 764 F.3d 293, 299 (3d Cir. 2014).

### E. **Retaliation Claim**

In his motion for summary judgment, Plaintiff raises, for the first time, a retaliation claim. (Doc. 54, brief in support). Specifically, Plaintiff states that he has "proven through documentation as well as witnesses statements that the Department of Corrections for the state of Pennsylvania, S.C.I. Camp Hill, and S.C.I. Graterford lost of all Plaintiff's legal documents/materials/appeals any and all of his legal work, documents, papers dating back to 2011, in some type of retaliation for his voiced concerns over his illegal conviction and for having documents to back up his illegal conviction..." Id. Additionally, Plaintiff claims that he "could of been retaliated against for having documents that some how were mixed in with his discovery in regards to a missing persons

case, where Plaintiff, after contacting the Attorney Generals Office in Scranton was visited by State Police Detective Sebastianelly, and turned the documents over to the guards at Graterford, it is not Plaintiff's fault that the missing persons documents got mixed in with his more than likely from the Monroe County District Attorneys Negligent Acts, regardless Plaintiff has established a prima facie case for retaliation, the burden shifts to the Defendants." Id.

The First Amendment offers protection for a wide variety of expressive activities. See U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224–25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. §1983, plaintiff must demonstrate (1) that he was engaged in constitutionally protected conduct; (2) that he suffered an "adverse action" by prison officials 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights"; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse

action taken against him." [Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)](quoting [Allah, 229 F.3d at 225](1)). If a prisoner sufficiently establishes a causal connection, prison officials may "overcome this element by demonstrating that the same action would have been taken in the absence of the protected activity." [Rauser v. Horn, 241 F.3d 330, 333–334 (3d Cir.2001)](1).

Plaintiff's claim fails to meet any of the requirements of a retaliation claim. However, even assuming, without deciding, that voicing one's opinion about the illegality of one's own conviction is constitutionally protected conduct, Plaintiff suffered no "adverse action" by Defendants. There is no record evidence that Plaintiff was ever disciplined in any way, shape, or form when it came to the issue of his missing paperwork. Moreover, Plaintiff, cannot meet the causal link between the exercise of a constitutional right and adverse action taken against him, as, he himself stated in his complaint, that he "do[es] not have a clue who lost or misplaced my legal work documents Graterford or Camp Hill." (See Doc. [1](1) at 8). Without being able to identify who did so, and/or with what intent, it is simply impossible to make a causal connection between the protected conduct and any theoretical adverse action Plaintiff suffered. Defendants are entitled to summary judgment.

## F.  **Preliminary Injunction**

Plaintiff "requests that a preliminary injunction be granted in his favor so he can retain his legal documents and any other relief this Honorable Court deems appropriate, as well as addressing the constitutional violations that took place against the Plaintiff in the immediate future." (See Doc. 75 at 4).

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. See American Tel. and Tel. Co. V. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 US. 1103 (1995). Moreover, issuance of such relief is at the discretion of the trial judge. Orson, Inc. v. Miramax Film, Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors:

(1)   likelihood of success on the merits;
(2)   irreparable harm resulting from a denial of relief;
(3)   the harm to the non-moving party if relief is granted; and
(4)   the public interest.

United States v. Bell, Civ. No. 1:CV-01-2159, 2003 WL 102610, *2 (M.D. Pa. January 10, 2003)(J. Conner)(internal citations omitted). It is the moving party that bears the burden of satisfying these factors. Id. The standards for a temporary restraining order are the same as those for a preliminary injunction. Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. See Continental Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 356 (3d Cir. 1980). Irreparable injury is "potential harm which cannot be redressed by a legal or equitable remedy following a trial ." Instant Air Freight, 882 F.2d at 801. A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." Id. The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunctive relief is to be issued. Id. Speculative injury does not constitute a showing of irreparable harm. Continental, 614 F.2d at 359; see also Public Serv. Co. v. West Newbury, 835 F.2d 380, 383 (1st Cir. 1987). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Instant Air Freight, 882 F.2d at 801 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1964)). Of course, a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge. See Weaver v. Wilcox, 650 F. 2d 22, 27 n. 13 (3d Cir.

1981)(prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions, but not claims for damages.)

Based on Plaintiff's failure to prevail on the merits of the instant civil rights action, Plaintiff's motion for injunctive relief (Doc. 74) will be denied.


## V.    Conclusion

Based upon the undisputed facts of record, Plaintiff's motion for summary judgment will be denied, and Defendants motion for summary judgment on all claims will be granted. An appropriate order shall issue.



s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Dated:    March 28, 2019**